Sean Huston appearing for Appellant, Elliot Stone appearing for Appalee. Okay. All right. Do we want to reserve some time, Mr. Huston? Your Honor, yes, we will. Can we please reserve five minutes for Louis Luttle? Of course. Please go ahead. Thank you. Good morning, and may it please the Court. My name is Sean Huston. Oh, sorry. No harm. And I represent the appellate and defendant in this case, Laura Valente. In Arts Attacks, Inc. LLC versus MDA Entertainment, Inc., it was said that judges are not like pigs hunting for truffles buried in the record. And it's an interesting expression, and it stands for the premise that it's not the court's responsibility to create arguments or look for favorable evidence on behalf of the litigants, especially when, as in this case, many of the arguments are not supported by mystical evidence. As in Arts Attacks, Inc., the plaintiff in this matter, Thomas Nolan, has relied on the trial court to scramble for supportive evidence in the record and make legal arguments on his behalf. The trial court's August 10, 2021 findings, conclusions, and order after trial. It's our opinion that it was very well thought out, and for the most part, it cited the law and the facts and went into the analysis for each of these points and was well done. This was mostly true up until the very end of the order, where the findings discussed the fraudulent transfer issues. And that's where it fell short of the fine analysis that was in the previous portion of the order, and it brings the reason for the appeal today. Now, this was not the fault of the trial court, because the plaintiff is the one that failed to provide the necessary accounting and legal argument to the trial court that was needed to prove up the value of any alleged fraudulent transfer of Valente Heron Company, Inc. and those assets to Valente Bella Industries. And for this morning, we'll call Valente Heron Company, VHCI, and Valente Bella Industries as VBI. Sadly, when it came to responding to the seven points raised in the appellant's opening brief on appeal, the plaintiff is basically just copied and pasted the trial court's order after trial, and they've ignored the new cases and the arguments that we presented in detail in response to that order and trial. I guess he's assuming that this panel is going to be doing the heavy lifting for him. But regardless, we will submit on our paper except for just a few of the specific issues that I wanted to highlight for the panel. The first one was, did the panel properly prove, value, and trace any of the assets that was properly transferred from Valente Heron Company to Valente Bella Industries? The issue is that there was no admissible evidence submitted as to what specifically was transferred from VHCI to VBI along with the value of that alleged asset. Instead, what the court and the respondent did was say, there is ample testimony and evidence. And then when it was time to show that point, it cited broadly to the entire record and every exhibit admitted at trial to justify that unsupported conclusion. Let me ask you, Mr. Houston. The question of what assets were transferred is something that Ms. Valente would know about, but Mr. Noland by that point really had no way to know about. Is it appropriate to impose much of a burden of specificity on Mr. Noland where the information is probably largely, maybe entirely within Ms. Valente's knowledge? Our position is that Ms. Valente is saying none of the assets were transferred, and it's his burden to prove what, if any, assets were transferred. And then it's also his burden to say, well, what was transferred? For example, he could have gone to the new salon and said, look, see all these bowls here? That came from the old salon. See that desk there? That came from the old salon. See that sign there? That came from the old salon. But that never happened. And we were astonished at trial that they never proved that. They never proved the value of the salon at closing, probably because it was losing money and had no value. And so when it came to our end, we were not going to meet their burden and introduce evidence on that fact. But the court made several references in both the findings of fact and what I refer to as the order denying the motion for reconsideration that all the assets of VHCI tangible and intangible were transferred, including salon chairs, mirrors, cabinets, computers, desks, products used in the shop inventory, and then the software and the computer. Is that wrong? Judge Brekker, yes, that is what he said in the conclusion. Our position is and I challenge Mr. Stone to bring it up. He never submitted into evidence any of those things. There was no evidence that any of those things were transferred except for one thing, and that was there was evidence that intangible assets of the failing business were actually were transferred. And that was the the marketing list, the client list. And notice it was sent to all of the VHCI clients that, hey, we've moved and we're over here now. And they gave the VBI salon location. But the question is, what's the value of a customer list and goodwill of a failing business? We don't know because the plaintiff failed to trace, define or give an expert opinion on the value of those individual assets. And not only that, but I don't think those assets were worth anything because the witness for the plaintiff, Adrienne Crawford, who bought VBI, was asked about it, about the client list. And she says, I don't think Valente had these clients. I don't think she built them over five years because I didn't see the clients coming in. I didn't see them. If these intangible assets provided no business to others, the value of the assets have to be minimal at least at best. And I would like to go on and point out something Judge Fraker said earlier today about offset and recoupment. But the trial court did provide the evidence for it and said that Mr. Sprigson either lent or gave $68,111.50 to the defendant, who in turn put it into VHCI. So she's entitled to assets of at least $68,111.50 as recruitment for the money she contributed to VHCI. And in Newbery Corp versus Fireman's Fund. Did she contributed? Who contributed that $68,111.50? Mr. Sprigson gave that $68,111.50 to Laura Valente to do as she wished and she lent it to the corporation. She gave it to the corporation. Is there evidence it was a loan? She did. She does have, there were promissory notes and we introduced the checks into evidence. I remember seeing promissory notes in favor of Mr. Noland. I don't remember seeing promissory notes in favor of either her or the second financer. I just don't remember seeing that in the record. Right. Ms. Valente did submit those promissory notes. I would rely on the trial order where he said that the defendant put it into VHCI. So she gave money to the corporation and now they're asking her to give the money back. How is that even an offset of recoupment on what is essentially her obligations to Mr. Noland? No, it's not her obligations to Mr. Noland at all. She owes no debt to Mr. Noland whatsoever. The only obligation she has is to the corporation. And I think that's very important. Thank you for bringing that out. He is not a direct creditor. Her liability is for the harm to the creditors of which Mr. Noland is the individual representative under state law. He is one of them. Go ahead. And the other point that I think has been brought up is are you really arguing equitable remedies for fraudulent transfer? Well, I think what happened here is I don't believe my client. If it's true that the only evidence is that my clients transfer opened up a new business and told the old clients come over to the new location. How how evil is that? I just don't think it's that evil. Well, it's not necessarily evil. But if you took something that was liable for the debts of VHCI and put it away outside the reach of VHCI's creditors for no consideration, that is the quintessential concept behind fraudulent transfer. And I believe her response would be, well, first of all, there wasn't the transfer and intention I don't think was there. Whatever value of the intangible assets I think were minimal at best. And I believe her intent was, hey, I'm entitled to that money because I lent to the corporation $61,000. So I I'm entitled to take some things, some assets from VHCI for my personal use because I gave I gave and lent money to VHCI. And in Newberry, they call it we're trying to avoid the absurdity of making A pay B when B owns A. And that's what we're having here. And as far and as far as the fraudulent intent, I think the court's right. Fraudulent transfer doesn't involve the evil intent that is spoken of in the other cases. Fraudulent transfer is it's just a transfer that an improper transfer. And I and I think that's where the staff and recruitment would still apply. I'm going to jump into my rebuttal just for a little bit. My third issue was, was it proper to equate the sale of the assets of Valente Bella Industries of $41,000 with the valued assets and properly transferred from Valente Hair & Company to Valente Bella Industries without considering any of the other unrelated assets that were also included in that particular sale? So in that $41,000 sale, there was the assignment of the prospect street lease, an agreement not to complete with Miss Crawford, the entire assets of the salon. And the plaintiff's own witness testified that that included improvements to and modifications to the ceiling, modifications to the plumbing, installing a new partition wall with large openings, new cabinets and booths for the stylus and display areas for products. It required a permit. The court made no adjustments for that. Mr. Nolan himself testified that these sort of expenses could be around $100,000 because that's what he paid for VHCI. The testimony wasn't that that VBI's improvements could be $100,000. He testified that's what it costs for VHCI. Right. And so I think it's I think it's fair to say if that's what it costs at that location, it's going to cost a significant amount of money for this new location. And I agree. There's there there. We don't know what it was, but we know there is. And then finally, I want to push back. I know I'm taking your ball is important point, though. I mean, in his order denying the motion for reconsideration, he did. He did. Right. Based on the testimony, Miss Crawford, it appears that the court to the court that they, the lease and the non-compete were of inconsequential value, if any. See trial transcript. And he quotes, I mean, doesn't that address the issue? I mean, he's saying basically they weren't worth anything. What wasn't worth anything? I'm sorry. The lease and the non-compete. Oh, I think they have to be worth something. Otherwise, why are they in the contract? That has to have some value at the very least. And that needs to be at least addressed. But moreover that. But the John Valente, the actual owner of that of VBI, he deposited eighteen thousand dollars into the account. And the plaintiff's own expert says, well, yeah, you've got to capitalize your business. Why isn't that eighteen thousand adjusted? It needs to be adjusted. How does that establish the value of the lease? It doesn't. What it does is it establishes the value of the VBI asset. If he what's happening is they're asking for the entire forty one thousand dollars and you have to subtract from that forty one thousand dollars. The value of the lease assignment, the value of the non-competition clause, the eighteen thousand that we know was put into prepping and and renovating the business and capitalization. And we have to assign some fair value for all of the improvements that were made. Now, this was the job of the plaintiff to do. His expert should have opined to all of these things and he didn't. It's the failure on the plaintiff to do that. And I'm way under. So I'm going to reserve for my rebuttal. All right. Thank you, Mr. Stone. Please go ahead. You're muted. I'm sorry. Can you hear me now? Yes. Thank you. Good morning, Judge Brand. Good morning, Judge Ferris and Judge Breaker. This case is a Husky footnote three case and it pivots on the third prong of five. Twenty three to eight. And that's actual fraud. And Husky sometimes people call it a rich case. I refer to it as the Husky case. I assume everybody knows which case I'm talking about. And that is any scheme to defraud, hinder or delay is is actionable and subject to not discharge under five. Twenty three to eight. Counsel, I don't mean to jump you to early in your in your discussion, but I mean, this case is somewhat unique because I don't I don't hear Miss Valenti challenging the liability. You know, as counsel spent his time, it really goes on to whether damages have been proven. Sure. So what what do you what do you contend was transferred? Sure. Can I lay a lay a. Let me tee up your answer, if I could, to set some context. So under five, twenty three to eight, Miss Valenti was found liable for being both the transfer or and transferee and a fraudulent conveyance. OK. Interestingly enough, she didn't schedule any of these assets in her petition. Then because the court made a finding of what it is she transferred. To Miss Crawford, that whatever it was, intellectual property, mirrors, customer list computers, whatever Judge Latham made his findings on the the the best way to determine what that was worth is what someone was willing to pay. That someone was Miss Crawford, who paid. How do we know that VBI's assets were comprised complete? Because Judge Latham found that there was three things, VBI's assets, the lease and the non-compete. How do we know VBI's assets were comprised completely of VHCI's assets? I believe Judge Latham made a finding that the transfer consisted of assets that originally were owned by VHCI. And and there's no dispute that Mr. Noland was a creditor of VHCI. And the judge made a factual finding that Miss Valente engaged in a scheme to delay, hinder and hide these assets from Mr. Noland, a admitted creditor. I think what we're driving at is, did he make a finding that VBI, I want to make sure I got the right initials here. The second company didn't acquire any assets of its own from other funding sources. They didn't. That was inferred. That was suggested. There was a claim that VBI was owned by Miss Valente's father, who never showed up at trial. There was no admissible evidence. There were arguments. Well, there's evidence of 18,000 put in. There's discussion about the desk, discussion about the sign. Discussion about different booths. And so how does that play out? OK, so Mr. Valente, Miss Valente's father was not a party to this action. He did. He were not litigating. No one was litigating or defending claims on his behalf, nor were they litigating a right to receive anything on Miss Valente's behalf. I'm sure the trustee would have stepped in to to claim a right to those before issuing the discharge. But this case was solely about Mr. Noland as a creditor of VCI and Miss Valente fraudulently transferred assets. And less than a month after receiving her discharge, she sold those to Miss Crawford for forty one thousand. The best way to determine the value of an asset is what someone is willing to pay. Even better is what someone actually paid. And here that number was forty one thousand. These those assets were different, though. I mean, let me say my understanding of the law is that for the fraudulent transfer damages, you have to show identify those assets that were transferred and value them as of the date of the transfer. Is that your understanding as well? Yes. All right. At the time, VHCI transferred its assets, whatever they were, when exactly they transferred it. Judge Latham is pretty clear that VHCI had been evicted and had shut its doors in large part because it could not pay its employees. It was not an operating business. VBI then operates and sells the salon to Miss Crawford. That is an operating business. Is that the same basis for for for comparison as the valuation? Well, no. Remember, under fraudulent conveyance, we have an action against the fraudulent transferee. And who was the fraudulent transferee? Well, the fraudulent transferee was VBI and then it was Miss Crawford. And if you remember in fields, if if the person who becomes the transferee later files for bankruptcy, that debt is not dischargeable in fields. And that's that's cited in the Husky case. So I'm not sure. Well, Miss Crawford paid for these assets. Right. So you're not seeking recovery from Crawford, were you? Well, the forty one thousand was put into Miss Valente's pocket. OK, she never scheduled these assets that were later converted into forty one thousand dollars in cash and put in her pocket less than a month after her discharge. OK, well, I think I think I've taken you on a side trip, but let me let me ask a little different way. Kind of the same thing, Mr. Judge Baker was after. We know that VBI had a lease that VHCI did not have. Correct. It had the new lease. Correct. And we know that VBI transferred that new lease with the leasehold improvements to Miss Crawford. Right. Correct. So we know to that extent that there were different assets transferred from VBI to to Miss Crawford than were transferred from VHCI to VBI. Right. No, they were actually the same. So the testimony and the evidence and the findings of Judge Latham is that whatever literally everything that VBI had, there was evidence it was the same years, the same employees. But not the lease. Right. Right. The lease. Well, there was there was no lease to transfer at that point. That's precisely I mean, VBI had a lease to sell. VHCI didn't. Correct. Correct. Correct. OK. And that lease at the time of transfer, the owner of the leasehold that was in VBI's name that Miss Valente signed was was effectively in default at the time of that transfer. So there was no value to the lease because it was in default. So VBI was in default under its lease. Is that what you're saying? Correct. And if you look back at the record, Judge Latham minimized the value of that lease. They just said they had no value. What was the minimus? No value. Didn't have value to Miss Crawford because she didn't have to move whatever assets she was buying from that prospect lease into a new location. Perhaps I think that's an attenuated argument and attenuated. I mean, if she couldn't operate that that salon as a turnkey operation at prospect. I mean, it boggles my mind that costs would not be incurred, which likely would be substantial to take those assets into a new location, such as VHCI did when it transferred them to VBI. Perhaps, but we're looking at the value at the time of the transfer and at the time that Miss Valente essentially liquidated and converted the assets that she was both transfer or transferring on. At the time, she converted those assets that she was holding to conceal them from Mr. Nolan. At the time, she turned them over to Miss Crawford. That sum was $41,000. That is more reliable than any expert because that's what somebody actually paid. I need to interrupt for just a second. Madam Clerk, Miss August, we can't see the clock anymore. I am informed that the streaming went down as well. Yes, I've just noticed that I'm on it. Just stand by, please. OK. Clock. We have about seven minutes to go for Mr. Stone. OK, I'm going to have to rely on you. Well, no, I'll we'll call it seven minutes right now. So go ahead, Mr. Stone. OK, I believe Judge Latham got it right. I think this is on all fours. It's a Husky footnote three case. Miss Valente was transfer were in transferee. And again, the standard here is not that the trial court gets the facts 100 percent accurate. It's can we identify a clear error on the part of Judge Latham's findings? And I don't think anybody suggested there was clear or was there some sort of abuse of discretion? There was none. And therefore, I think that the the arguments brought forth by Miss Valente should should not be persuasive at all. And I think that the court's order should stand and the judgment should stand. OK, all right. Any further questions for the panel? No, thank you. OK, back to you, Mr. Huston. We don't have the clock. My best memory is you were somewhere inside of three minutes. So let's just call it three minutes, if that's OK with you. And I'm going to go ahead and speak super fast, despite the lower court statement. Nowhere in the record is there any actual evidence of transfer of any asset except for the client list and goodwill. Plaintiff has failed to provide anything to the court to the contrary and had multiple opportunities to do it. The trial court said that the best and only evidence to show what was transferred from one company to the other was a sale that happened six months later, not one month later. And on that basis alone, the court awarded the plaintiff the forty one thousand dollars. However, I would like to point out that when someone says that something is the only evidence, that evidence by definition is at the same time the best evidence and it's the worst evidence. The reason why it's an improper benchmark is, as the court said, there were other assets involved in that transaction. There was we know for a fact that there was a new sign that had to be put up and that sign was five thousand dollars. So there's got to be at least a subtraction of five thousand dollars. We know that there were physical hardware assets that were put in fixtures that were put in that couldn't have come from VHCI. There should be an adjustment for that. The bottom line, though, is that it's the plaintiff's burden to account for those things. And it didn't. And I'd like to take the court to in Ray Gabby, where it says when the plaintiff fails to establish the value for those specific fraudulent transfers, the entire judgment should be void and dismissed in its entirety for that failure. If the court could consider a woman who lends a valuable painting to a large museum for display and then the museum destroys the painting due to negligence, what's her damages? Can she sue for the value of the painting or does she sue for every painting in the museum? I think that justice, logic and fair play would say that the answer has to be just the value of the painting. So in this case, the plaintiff was awarded forty one thousand dollars or the value of all the paintings instead of just the value of the paint of our own painting. And the plaintiff shouldn't be rewarded for not providing an accounting for the actual value of the transfer on the date it was transferred. You are in a good role. I apologize. All right. But didn't he in the court in its findings, in fact, at the conclusion, the damages part say, look, I'm going to look at a hair salon at Girard. I'm going to look at a hair salon at Prospect. The hair salon at Prospect was sold for forty one thousand. That's the damages for the hair salon at Girard. I think I think that's what the judge did do. And the reason why the judge did it is because the plaintiff sent the court on a truffle hunt. But there were no truffles to be found. So the court had to justify its decision by by going to the only evidence it did have. And it was a value of another salon. And I would argue getting back to Judge Ferris's initial question brings the full circle. I mean, what's wrong with that? In this instance, when your client was was in charge of the assets and effectively she moved her business from Girard over to Prospect and that was sold. Because there were she wasn't the sole owner of the company. There was money people deposited. Other people deposited money in the new salon. Also, other money was used to build out the salon. There were other things in that sale that that was beyond just simply the assets. So there were more paintings in this museum than just the BHCI transfer. And they never transferred those assets. They never put the value to those assets. We don't know. Also, I'd like to point out that, hey, I have a car. It's a Honda Accord. It could be very different from someone else who has a car who's a plaid Tesla with one hundred and forty thousand dollars. You can't just say here's a salon and there's a salon that that's the same. It's I know why the court did it. The court had no other choice, but it's still an improper benchmark. And I think that's where the issue lies. Thank you. I think you've exhausted your time unless there's more questions from the panel. No, thank you. OK, thank you. Thank you. Can I leave the court with one question? One statement. It looks like I have 30 seconds. I'm sorry. That's actually you're actually passed. Oh, right. I am. I thank you. All right. OK, thank you very much. Thank you for your arguments. The matter is submitted. And that is the end of our calendar. So courts and recess.
judges: Faris, Brand, Spraker